UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MARY L. JOHNSON, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>       v.<br><br>METRO-GOLDWYN-MAYER STUDIOS INC., AND TWENTIETH CENTURY FOX HOME ENTERTAINMENT, LLC,<br><br>        Defendants. | CASE NO. C17-541RSM<br><br>ORDER APPROVING FINAL SETTLEMENT, CERTIFYING CLASS, AND GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES AND NAMED PLAINTIFF ENHANCEMENT AWARD |

## I.    INTRODUCTION

This matter comes before the Court on Plaintiff's Unopposed Motion for Final Approval of Stipulation and Agreement of Settlement and Final Certification of the Settlement Class (Dkt. #50) (the "Motion for Final Approval") and Plaintiff's Unopposed Motion for Attorneys' Fees and Expenses and Named Plaintiff Enhancement Award (Dkt. #51) (the "Motion for Fees"). No potential class members have objected to approval of the settlement or Plaintiff's request of attorneys' fees, costs, and enhancement awards. Defendants have agreed not to oppose any requested attorneys' fees and expenses up to a total of $350,000. Dkt. #51 at 2. On July 31, 2018, the Court heard argument from Plaintiff in support of her Motions and requested Class Counsel's billing records after noting the significant discrepancy between the benefit realized by

ORDER – 1

the class and Class Counsel's fee request. Dkt. #58. The Court took the matter under advisement at that time. After reviewing Plaintiff's Motions, the billing records submitted for the Court's review, and the remainder of the record and for the reasons stated below, grants Plaintiff's Motion for Final Approval and grants in part Plaintiff's Motion for Fees.

## II.     BACKGROUND

Defendants Metro-Goldwyn-Mayer, Inc. and Twentieth Century Fox Home Entertainment LLC marketed several James Bond DVD and Blu-ray boxsets as containing "[a]ll the Bond films" and "every gorgeous girl, nefarious villain and charismatic star." Dkt. #35 at ¶¶ 27–39. However, the boxsets did not include two James Bond movies—*Casino Royale* and *Never Say Never Again*. *Id.* at ¶¶ 40–55. Plaintiff relied on the advertising, but did not "receive the product she was led to believe she purchased." *Id.* at ¶¶ 58, 62–64. Accordingly, Plaintiff instituted this action on behalf of a nationwide class of consumers, alleging a violation of Washington's Consumer Protection Act, breach of express warranties, and breach of the implied warranty of merchantability. *Id.* at ¶¶ 74–104.

Plaintiff originally filed suit in Washington's King County Superior Court and Defendants removed the action to this Court on April 7, 2017. Dkt. #1. Thereafter, the Court partially granted Defendants' motion to dismiss, dismissing the claim for breach of the implied warranty of merchantability, dismissing Defendants' corporate parents, and granting Plaintiff leave to amend. Dkt. #34. Plaintiff filed an amended complaint that re-alleged the dismissed claims and claims against the corporate parents. Dkt. #35. This prompted the parties to mediate, stipulate to dismissal of the corporate parents, and ultimately reach a preliminary settlement which the Court approved. Dkts. #36, #38, #41, and #49.

The settlement entitles the approximately 300,000 class members to digital copies of the two films that were omitted from the original boxsets upon making a valid claim. Dkt. #50, Ex. 1 at 8. If a class member attests that the class member does not have the capability to use digital copies, physical DVDs will be provided. *Id.* To submit a valid claim, class members must fill out a claim form and submit proof of purchase. *Id.* at 9. The Settlement Administrator approved relief for 643[1] claims. Dkts. #52 and #57. Of those claims, 278 were initially submitted without valid proof of purchase, but the Settlement Administrator was instructed to deem the claims valid. Dkt. #52 at ¶ 18. Under the settlement, Defendants also agree to alter their use of "all" and "every" with regard to future marketing of James Bond movie collections. Dkt. #50, Ex. 1 at 10.

The settlement agreement provides that Defendants will not "oppose or [] submit any evidence or argument challenging or undermining" an application by Class Counsel for attorneys' fees, costs, or expenses in an amount not to exceed $350,000.00. *Id.* at 13. Class Counsel seeks attorneys' fees and costs in the amount of $350,000 ($334,690.56 in fees and $15,309.44 in expenses). Dkt. #51 at 14–15. Plaintiff also seeks approval of a $5,000 award to the class representative. *Id.* at 15–16. No class members have opted-out of the settlement or objected to the settlement or the Motion for Fees. Dkt. #52 at ¶¶ 13–16.

## III. DISCUSSION

### 1. Final Approval of the Class Action Settlement

#### a. Legal Standard

Settlement of class actions may only occur where the court determines that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Due to the nature of class actions, courts must play a difficult balancing role in reviewing class action settlements. On the one hand,

---

[1] This represents only 0.21% of the potential class of 300,000.

"there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citation omitted). The Court should not second guess the settlement terms and review should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quoting *Officers for Justice v. Civil Serv. Comm'n of City and Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). On the one hand, courts must act in a fiduciary capacity for the absent class members in light of due process concerns. *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015) (citations omitted). This fiduciary duty is heightened when the settlement occurs prior to formal class certification. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–47 (9th Cir. 2011) (citations omitted).

District courts in the Ninth Circuit are held "to a higher *procedural* standard" for settlements before class certification and "must show [they have] explored comprehensively all factors" and consider evidence of collusion or conflicts of interest. *Allen*, 787 F.3d at 1223–24 (citations omitted). Specifically, district courts must consider relevant factors including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.

*Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). After considering the relevant factors, the Court must decide whether to accept or reject it and may not "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

### b. Final Approval of the Settlement Agreement is Appropriate

Plaintiff's unopposed Motion for Final Approval adequately addresses the *Churchill* factors and convincingly argues for approval. The Settlement Agreement is not perfect and there are aspects that give the Court significant pause. But, on balance, the Settlement Agreement is fair, reasonable, and adequate.

The *Churchill* factors almost uniformly support approval of the settlement in this case. Plaintiff acknowledges that maintaining a nationwide class in this case would be difficult and that continued litigation would be expensive and difficult, supporting settlement. Dkt. #50 at 12–14. More convincingly, Plaintiff argues that the Settlement Agreement provides the class with access to the two films that Plaintiff maintains were deceptively omitted from the boxsets. *Id.* at 14. Plaintiff points out that the class members get "everything that they sought in litigation: possession of the Non Franchise Films."[2] *Id.* The Court does note that class members do not, in fact, obtain the physical DVDs that they presumably desired, only digital copies. Nevertheless, the settlement provides class members substantially all of the relief sought, favoring settlement. Further, the settlement has not prompted any negative reaction from the class and Class Counsel "strongly support [the] settlement." Dkt. #50 at 16–17.

The only *Churchill* factor weighing against approval is the extent of discovery and stage of the proceedings. Plaintiff conducted only targeted informal discovery and confirmatory discovery and the case is in its relative infancy. But little would seem to be gained through discovery or additional litigation as the class was unlikely to receive far superior relief. Thus, this factor does not weigh heavily against approval.

---

[2] Plaintiff also points out that Defendants have agreed to alter future packaging by omitting "all" or "every" from boxsets that do not include the two films at issue.

The Court does, however, have some more general concerns about the Settlement Agreement. The Ninth Circuit has identified three subtle signs of collusion in settlements: "(1) 'when counsel receive a disproportionate distribution of the settlement;' (2) 'when the parties negotiate a "clear sailing" arrangement' (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen*, 787 F.3d at 1224 (citing *In re Bluetooth*, 654 F.3d at 947). All three factors are present here.

Under the Settlement Agreement, Class Counsel receive a disproportionate distribution of the settlement. The class is not entitled to any money, only digital codes.[3] Rather Plaintiff and Class Counsel are the only parties entitled to a possible financial recovery. In total, the class submitted 643 claims. Utilizing the current list prices of the two digital films,[4] the class will recover a maximum value of $18,634.14. Conversely, Class Counsel seeks $350,000 in attorneys' fees and expenses and a $5,000 award for Plaintiff. Viewed as a portion of the total sum Defendants were willing to pay, Class Counsel receives 93.67% of the recovery.[5]

Likewise, the Settlement Agreement contains a "clear sailing" clause: "Class Counsel will apply to the Court for an award of attorneys' fees and expenses in an amount not to exceed $350,000. Defendants agree not to oppose or to submit any evidence or argument challenging or undermining such application for attorneys' fees, costs, or expenses." Dkt. #50, Ex. A at ¶ 19.

---

[3] The class may, in certain circumstances, receive physical DVDs.

[4] Plaintiff notes that Amazon advertises a digital copy of *Never Say Never Again* for $13.99 and a digital copy of *Casino Royale* for $14.99. Dkt. #51 at 2 n.5.

[5] Class Counsel's share of the recovery further increases as one considers Defendants' true costs for providing digital copies of movies produced in 1967 (*Casino Royale*) and 1983 (*Never Say Never Again*). *See* https://www.rottentomatoes.com/franchise/james_bond_007 (last visited Oct. 15, 2018).

Class Counsel has pointed out that the provision was negotiated following settlement of the class claims. Dkt. #50 at 6. This does insulate the provision from a direct inference of collusion. *In re Bluetooth*, 654 F.3d at 948 (noting that the mere existence of the provision created a "heightened duty to peer into the provision and scrutinize" the settlement). But, even if not directly indicative of collusion, the provision hinders a fair award of fees. The Court is deprived of Defendants' relevant knowledge of the reasonableness of the fee request. In effect, the parties have short-circuited the fact-finding, adversarial process. *See Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (noting in context of common fund that class members with small individual claims are unlikely to object and defendant has little interest in outcome of fee request).[6]

Lastly, the Settlement Agreement is structured such that all unclaimed benefits are returned to Defendants. The Settlement Agreement represents a claims-made settlement and is "the functional equivalent of a common fund settlement where the unclaimed funds revert to the defendant." 4 NEWBERG ON CLASS ACTIONS § 13:7 (5th ed.). Only those submitting claims require any "pay-out" by Defendants. *See In re TJX Companies Retail Sec. Breach Litig.*, 584

---

[6] As Judge Vratil, of the U.S. District Court for the District of Kansas, has noted, clear sailing provisions:

> deprive the court of a full record and benefits of the adversary process. They encourage plaintiffs' counsel to maintain inadequate contemporaneous time records and to submit their fee requests on records which cannot withstand the adversary process. They promote a lackadaisical approach to fee litigation— regrettably forcing the Court to act as adversary to plaintiffs' counsel in examining fee applications. They can lead to unreasonable fee requests. To top it off, such stipulations have no apparent benefit to plaintiffs. The only beneficiaries are plaintiffs' counsel . . . who would insulate their fee requests from scrutiny through the adversary process.

*Bruner v. Sprint/United Mgmt. Co.*, No. 07-2164-KHV, 2009 WL 2058762, at *10 (D. Kan. July 14, 2009).

ORDER – 7

F. Supp. 2d 395, 405 (D. Mass. 2008) ("[I]n . . . a claims-made settlement, the defendant is likely to bear only a fraction of the liability to which it agrees."). Defendants are given the sole benefit of typically low rates of class participation in claims-made settlements. *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) ("'claims made' settlements regularly yield response rates of 10 percent or less"); 2 McLaughlin on Class Actions § 6:24 (14th ed.) (participation rate as low as 3% not unusual in consumer class actions) (citing *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) and *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n.60 (3d Cir. 2011)); *Tait v. BSH Home Appliances Corp.*, No. SACV10-711-DOC(ANx), 2015 WL 4537463, at *7 (C.D. Cal. July 27, 2015) (noting challenge of providing notice to all owners of defective washer). The anticipated low participation is further exacerbated by the settlement's requirement that proof of purchase be submitted for a valid claim. Dkt. #50, Ex. A at ¶ 8.1. Class members are unlikely to have receipts for DVD boxsets purchased as far back as September 2012. Dkt. #35 at ¶ 27. While Defendants ultimately allowed claims that were submitted without proof of purchase, Dkt. #52 at ¶ 18.b, the stated requirement likely dissuaded some class members from believing that they should even submit claims.

These indicia of collusion give the Court serious pause in finding the Settlement Agreement fair, reasonable, and adequate. At the same time, no class members have objected. While this is generally strong proof of the reasonableness of the settlement, in this case, it may simply demonstrate the class's apathy. The settlement does provide the class access to the two movies omitted from the boxsets, but those movies are not the most popular James Bond movies.[7]

---

[7] The movies omitted are not the most popular of the franchise. *Casino Royale* has the worst rating by approved critics and lowest user rating of the 26 James Bond movies reviewed on popular movie site Rotten Tomatoes. *See* www.rottentomatoes.com/franchise/james_bond_007 (last visited Oct. 15, 2018). *Never Say Never Again* fares better, ranking 17th out of 26 for ratings by approved critics, but 25th out of 26 for user ratings. *Id.*

Thus, the low participation rate[8] may demonstrate that class members simply did not care enough to take the time to submit claims, much less locate proof of purchase from years prior. But the low cost to Defendants of providing the films[9] made it likely that the action would be settled for copies of the omitted movies. Ultimately, because the settlement did provide class members the opportunity to obtain the omitted movies and because a significantly better outcome seems unlikely, the Court concludes that the settlement is fair, reasonable, and adequate.

## 2. Certification of Class

### a. Legal Standard

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). Where a class is certified in the settlement process, the Court "must pay 'undiluted, even heightened, attention' to class certification requirements." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)).

Under Federal Rule of Civil Procedure Rule 23(a), the party seeking certification must first demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 512 (9th

---

[8] The 643 claims represented only 0.21% of the 300,000 member class.

[9] For instance, Plaintiff purchased her boxset, containing 23 movies, for approximately $106.44. Dkt. #35 at ¶¶ 33–34, 58. The average price was therefore $4.62 per movie. The Court suspects that Defendants' costs per movie were significantly less.

Cir. 2013).  Here, Plaintiff seeks class certification under Federal Rule of Civil Procedure 23(b)(3) because "the questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

### b. The Court will Certify the Class

Nobody contests certification of the proposed settlement class and the Court finds that certification of the class is appropriate.  Plaintiff's proposed class, as used in the Settlement Agreement and as approved in the Court's Preliminary Approval, consists of:

> All persons and entities (and their successors-in-interest, assigns, and heirs) in the United States that purchased one or more of the James Bond Sets prior to January 31, 2018.  Excluded from the Settlement Class are: MGM and Fox and any person, trust, firm, corporation or other entity Affiliated with or related to MGM and Fox; and Any persons or entities who exclude themselves by submitting a timely Request for Exclusion in accordance with the requirements set forth by the Court.

Dkts. #49 at 2 and #50, Ex. A at ¶ 3.

As detailed in the Court's Preliminary Approval (Dkt. #49 at 2–3) and Plaintiff's Motion for Final Approval (Dkt. #50 at 17–23) and for the reasons stated therein, the Court finds that the class satisfies the requirements of Federal Rule of Civil Procedure 23(a):

- <u>Numerosity:</u> The number of class members, estimated at approximately 300,000, is so numerous that joinder of all members is impracticable.

- <u>Commonality:</u>  There are questions of law and fact common to the class, namely whether Defendants' packaging was misleading and deceptive.

- <u>Typicality:</u> Plaintiff's claims are typical of the claims of the class she represents, as she, like all class members, bought a boxset of "all" James Bond films but did not receive the two omitted films.

- <u>Adequate Representation:</u> The Plaintiff has fairly and adequately protected the interests of the class.

Additionally, the class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(3). All of the class claims turn on the same operative question of whether "Defendants' representations were misleading and deceptive." Dkt. #50 at 22. And, a class action is superior for adjudicating this action as the individual claims are so small that they are otherwise unlikely to be litigated. Dkt. #50 at 23. Accordingly, the Court approves the settlement class.

### 3. Attorneys' Fees

#### a. Legal Standard

Pursuant to Federal Rule of Civil Procedure 23(h), "the court may award reasonable attorney's fees and nontaxable costs that are authorized . . . by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 963–64 (9th Cir. 2003); *Knisley v. Network Assoc.*, 312 F.3d 1123, 1125 (9th Cir. 2002); *Zucker v. Occidental Petroleum Corp.*, 192 F.3d 1323, 1328–29 & n.20 (9th Cir. 1999)). This obligation is independent of any objection, *Zucker*, 192 F.3d at 1328–29, and district courts must not rubber stamp award applications but must act as a fiduciary for the class. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052 (9th Cir. 2002). In determining an appropriate attorneys' fee award, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983). "Attorney's fees are *never* 'attributable to' an attorney's work on the action. They are 'attributable to' the relief obtained for the class." *In re HP Inkjet Printer Litigation*, 716 F.3d 1173, 1182 (9th Cir. 2013) (emphasis in original) (citing *Class Plaintiffs v. Jaffee & Schlesinger, P.A.*, 19 F.3d 1306,

1308 (9th Cir. 1994)) (noting that "[a]n attorney who works incredibly hard, but obtains nothing for the class, is not entitled to fees calculated by any method").

### b. Method of Calculation of Attorneys' Fee Award

The Ninth Circuit generally uses two methods to determine attorneys' fees: the percentage-of-recovery method or the lodestar method.[10] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (quoting *In re Bluetooth*, 654 F.3d at 941–42). Either test may be appropriate under the circumstances of the particular case. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.3d 1301, 1311 (9th Cir. 1990) ("the choice between lodestar and percentage calculation depends on the circumstances"). The lodestar method is generally most appropriate where "the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation." *Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) (citing *In re Bluetooth*, 654 F.3d at 941). The percentage method is better suited for settlements where a common fund is created and easily quantified. *In re Bluetooth*, 654 F.3d at 942. District courts have discretion to choose which calculation method they use in determining a reasonable fee award. *Id.* Because courts may utilize either method, the method not chosen is often used as a "cross-check." *Yamada*, 825 F.3d at 547 (indicating that courts are encouraged to cross-check fee calculations against a second method).

---

[10] The Court notes that, because this is a diversity case, Washington law applies to the determination of the fee award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). However, under Washington law, courts may choose either the lodestar or the percentage-of-recovery method to determine the reasonableness of attorneys' fees and often look to federal law for guidance. *See Bowles v. Wash. Dept. of Ret. Sys.*, 121 Wash.2d 52, 72, 847 P.2d 440, 450–51 (1993). In a consumer protection action such as this, the basis for fees is statutory and the lodestar method is most appropriate. *Id.* Because the Court otherwise selects the lodestar method, because Washington looks to federal law for guidance, and because Plaintiff's briefing focuses on federal precedent, the Court has similarly focused on federal precedent.

The Court finds that the lodestar method is appropriate in this case for numerous reasons. First, the action was brought, at least in part, under Washington's Consumer Protection Act, which provides for an award of statutory attorneys' fees. REV. C. WASH. § 19.86.090; *Bowles v. Wash. Dept. of Ret. Sys.*, 121 Wash.2d 52, 72, 847 P.2d 440, 450 (1993) (indicating lodestar preferred when calculating statutory attorneys' fees); *see also Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wash. App. 553, 568, 825 P.2d 714, 722 (1992) (noting that statutory attorney fees are aimed at helping the victim file the suit and serves the public interest). Second, the settlement did not create a true common fund as it did not establish a single sum for both class compensation and attorneys' fees. *See* Dkt. #50, Ex. A (class members receive set compensation and the difference between the Court's award of attorneys' fees and $350,000 reverts to Defendants). Plaintiff also indicates that class compensation was negotiated first, with attorneys' fees being negotiated only after settlement of the class claims. Dkts. #51 at 6 and #50, Ex. A at ¶¶ 19, 20. Third, at least part of the relief obtained under the settlement agreement was injunctive relief and the lodestar method is often used "where the relief sought and obtained is not easily monetized." *Yamada*, 825 F.3d 536 (citing *In re Bluetooth*, 654 F.3d at 941). Fourth, Plaintiff has considered only the lodestar method in her Motion for Fees. Dkt. #51 at 3–14.

### c. Lodestar Method

The lodestar calculation is made by "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Online DVD-Rental*, 779 F.3d at 949 (quoting *In re Bluetooth*, 654 F.3d at 941) (quotation marks omitted). The lodestar calculation is made with consideration of the *Kerr* factors, including (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill required, (4) the

preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or circumstances, (8) the amount involved and results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67, 70 (9th Cir. 1975). Many of the factors have been subsumed into the lodestar calculation itself. *Cunningham v. Cnty. of Los Angeles*, 879 F2d 481, 487 (9th Cir. 1988). Those factors not subsumed can justify a further adjustment of the lodestar amount.

### i. Reasonable Hourly Rate

"Fee applicants have the burden of producing evidence that their requested fees are 'in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1110 (9th Cir. 2014) (quoting *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 980 (9th Cir. 2008)). "[T]he determination of a reasonable hourly rate 'is not made by reference to the rates actually charged the prevailing party.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007) (quoting *Mendenhall v. Nat'l Transp. Safety Bd.*, 213 F.3d 464, 471 (9th Cir. 2000)). "Rather, billing rates should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." *Welch*, 480 F.3d at 946 (citing *Davis v. City and Cnty. of San Francisco*, 976 F.2d 1536, 1545 (9th Cir. 1992)) (internal quotation marks omitted). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge*

*Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979 (9th Cir. 2008) (vacating award of attorneys' fees in Fair Debt Collection Practices Act case where district court failed to identify the relevant community or address the prevailing market rate).

Here, Plaintiff fails to adequately establish that Class Counsel's hourly rates are reasonable within the district for the work performed. Mr. Statman, of the Cincinnati, Ohio, firm of Statman Harris & Eyrich, LLC, provides a range of normal hourly rates charged by his firm without any analysis of a reasonable rate within this District. *See* Dkt. #54 at ¶¶ 9–10 ("Attorney rates ranged from $395.00/hour to $695/hour, based on the experience of the attorney. The reasonableness of Class Counsel's fees is further confirmed by reviewing hourly rates charged by attorneys and other time-keepers."). Mr. Statman's conclusory statement on its own is not sufficient. *Cf. Welch*, 480 F.3d at 947 (citing *United Steelworkers of Am.*, 896 F.2d at 407) (approving hourly rate supported by rate determinations in other cases and declarations from comparable lawyers in the market). Mr. Kleinberg, of the Tacoma, Washington, firm of Eisenhower Carlson PLLC, indicates: "I believe public records and my professional biography that is accessible online via my firm's website demonstrate the hourly rate of $410 that I have applied to the time that I have spent working on this case is reasonable." Dkt. #55 at ¶ 7.

The only evidence Plaintiff provides of rates charged by attorneys within the District is Mr. Kleinberg's rate of $410. Brief research indicates that this is within the range of a reasonable hourly fee. *See Bund v. Safeguard Properties, LLC*, No. C16-920JLR, 2017 WL 1613340 (W.D. Wash. Apr. 4, 2017) (finding hourly rates ranging from $205–$330 to be reasonable in a putative class action alleging common law and Washington Consumer Protection Act claims and finding

ORDER – 15

that such rates "comport with the court's 'own knowledge of customary rates'"); *Wilbur v. City of Mount Vernon*, C11-1100RSL, 2014 WL 11961980 (W.D. Wash. April 15, 2014) (finding rates between $190–$580 reasonable in a civil rights class action lawsuit, with several rates around $400). The Court, on the record before it, finds that $400 is a reasonable hourly rate within the District for a case of this nature.

### ii. Reasonable Hours

As with the hourly rate, the party seeking fees has the "burden of showing the time spent and that it was reasonably necessary to the successful prosecution of" the case. *Frank Music Corp. v. Metro-Goldwyn-Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir. 1989). This requires "evidence supporting those hours." *Welch*, 480 F.3d at 945–46 (citing *Hensley*, 461 U.S. at 433). The court excludes those hours that are not reasonably expended because they are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. After reviewing Class Counsel's hourly billing records, the Court finds several areas in which Plaintiff has not satisfied the burden of demonstrating that the hours claimed—a total of 615.55—are reasonably expended for the benefit of the class.

First, Ms. Derrien, of Statman Harris & Eyrich, LLC, often engages in "block billing" by recording several discrete tasks under one time entry. This makes the Court's review of the amount of time spent on particular activities more difficult and justifies a reduction of the hours billed. *Welch*, 480 F.3d at 948 (noting California State Bar study finding block billing "may increase time by 10% to 30%").

Second, the Court finds that excessive time was spent on inter-office and intra-office conferences. Class Counsel represent that they are all experienced counsel, making such extensive conferencing unnecessary, and the conferences often appear duplicative and serving

ORDER – 16

unclear purposes. *See Welch*, 480 F.3d at 949; *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1298 (9th Cir. 1994) (approving reduction for failing to adequately document teleconferences). Many of these conferences were to get Mr. Statman familiar with the case so that he could be present at important junctions. While there is nothing wrong with this strategic choice, Class Counsel should bear the expense of the inefficient and unnecessary work that choice created. Further, the entries are often vague and Plaintiff otherwise presents no evidence showing that these hours were necessary or advanced the case or the interests of the class.

Third, Class Counsel has billed an unreasonable amount of travel time. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1298–99 (reducing travel time by half because "distractions associated with travel, especially after a full day of work, likely reduced the attorneys' effectiveness while en route"). Further, for some travel time, there is no indication that substantive work was even performed.

Fourth, the amount of time spent on particular portions of the case do not appear reasonable for the nature of the case. For instance, the billing records submitted indicate that Class Counsel spent approximately 62.5 hours drafting the initial complaint. Class Counsel also spent approximately 43.3 hours on the motion for preliminary approval and approximately 58.6 hours on the Motions for Final Approval and for Fees. Yet, significant portions of these motions were duplicative with little to no changes. *Compare* Dkt. #46 *with* Dkt. #50; Dkt. #51 at 4–5 (quoting extensively from *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-5437RBL, 2008 WL 1901988 (W.D. Wash. April 24, 2008)); *Welch*, 480 F.3d at 950 (reducing hours billed where motion contained language lifted from other submissions). There is also significant overlap between the Motions for Final Approval and for Fees and the supporting declarations. *Compare* Dkt. #50 *with* Dkts. #52 and #53; and Dkt. #51 *with* Dkts. #54 and #55.

Fifth, Class Counsel offers no justification for the number of hours expended in a case that ultimately recovered a maximum value of $18,634.14 for the class. Plaintiff's Motion for Fees does not attempt to explain why 615.55 hours was reasonable in this case and instead focuses on analyzing the *Kerr* factors that may justify a slight multiplier to get the fee calculation to exactly $350,000. The only support for the hours requested are the identical conclusory statements by Mr. Statman and Mr. Kleinberg that "[a]ll of the work performed by [each declarant's firm] was vital to advancing this litigation, narrowing it, and negotiating a successful Settlement Agreement both during and after mediation in Los Angeles." Dkts. #54 at ¶ 7 and #55 at ¶ 8. The burden to justify such a disproportionately high number of hours rests with Class Counsel. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d at 1306. Class Counsel has not justified that the hours expended were reasonably necessary for the result obtained here.

Sixth, Plaintiff's puffery with regard to the work performed in this case and the results obtained give the Court pause as to whether the billing records may be similarly exaggerated. For instance, Plaintiff points to the "intensive pre-filing investigation," which, from the billing records appears to be reviewing online reviews, attempting to locate potential plaintiffs, and watching the films and special features. Dkt. #51 at 2–3. Plaintiff points to "aggressive law and motion practice," which, from the billing records appears to be defending Defendants' motion to dismiss. Dkt. #51 at 3. Plaintiff points to formal and informal discovery conducted which appears to be primarily informal discovery aimed at valuing possible settlement. Dkt. #51 at 3. Likewise, Plaintiff claims that the "mediation/settlement negotiation process [] spanned many months" and involved multiple telephone conferences while the billing records reveal a one day mediation, one follow up call with the mediator, and coordination with defense counsel on settlement documents. Dkts. #50 at 4 and #51 at 3. Plaintiff also represented that there was

additional work to be done which would further establish the reasonableness of the fee award, Dkt. #51 at 2–3, but Class Counsel indicated at the July 31, 2018 hearing that this amounted to "crossing 'T's' and dotting 'I's'" on a proposed order that had already been submitted. While Class Counsel may certainly take pride in their work, the exaggerated characterization of their efforts informs the Court's consideration of billing records which already appeared excessive.

For all of these reasons, the Court believes that a reduction in the claimed hours is appropriate. The Ninth Circuit has approved of a 10% haircut of hours without a specific explanation and may apply a cut larger than 10% with a "weightier and more specific" justification for doing so. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112–13 (9th Cir. 2008). Due to the numerous justifications above, the Court finds that a 25% cut of the hours claimed is a more reasonable representation of the work required in this case. While the Court and the parties might quibble over the calculation of an appropriate award, "[t]he essential goal in shifting fees . . . is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 3:07-CV-5944 JST, 2016 WL 721680 *43 n.34 (N.D. Cal. Jan. 28, 2016) (subsequent history omitted) (noting that selecting lodestar or percentage method "is truly a matter of comfort and gut sense . . . rather than a real methodogical difference"). Accordingly, the Court awards attorneys' fees in the amount of $184,665.

### iii. Lodestar Multiplier

The lodestar amount is presumptively reasonable and a multiplier is only used to adjust the lodestar amount in "rare" or "exceptional" cases. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). In determining whether to apply a multiplier, the court considers the *Kerr* factors that have not been subsumed into the lodestar calculation itself.

Plaintiff devotes much of her briefing to justify a small positive multiplier that tellingly bring the total request to the $350,000 that will not be challenged by Defendants. The Court does not agree that a multiplier is appropriate here.

As an initial matter, Plaintiff appears to only consider the *Kerr* factors that support her request. Of note, Plaintiff omits consideration of the legal skill necessary, time limitations imposed, and the amount in controversy. Dkt. #51 at 6–14. Of the *Kerr* factors Plaintiff does consider, the majority are already subsumed into the initial lodestar calculation. Dkt. #51 at 6–14 (considering counsel's time and labor, the novelty of the case, preclusion of other employment, the customary fee, the results obtained, and the experience of counsel). Those that are not do not warrant a multiplier in this case.

Plaintiff argues that her request is reasonable because the case was taken on a contingency basis. This factor may well be subsumed into the calculation of an hourly rate as it is to be based on the rates of attorneys within the District doing comparable work. Nevertheless, the Court does agree that Class Counsel undertook risk on behalf of the class by fronting the costs of litigation in an action that would otherwise not have been brought. But contingent fees are not uncommon in cases of this nature.

Plaintiff also argues that the request is reasonable "in light of other fee and expense awards that were agreed to by the parties and/or approved by courts here in Seattle." Dkt. #51 at 13. But Plaintiff merely cites to the amounts awarded without looking to the underlying benefit obtained for the class. For instance, Plaintiff points to an award of $1,887,792.91 in *Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 WL 1858797 (W.D. Wash. May 3, 2013). Plaintiff does not mention that, based off of only the benefits claimed, the settlement was valued at $5,276,142.50 and that any attorneys' fees not awarded would be distributed to the class on a pro

rata basis. *See id.* Without providing the underlying context, awards in other cases are irrelevant to the determination of a reasonable award in this case.

The result of this case was not extraordinary, but was typical and expected from attorneys charging rates similar to Class Counsel's. Consideration of the *Kerr* factors does not demonstrate the rare or exceptional circumstances that justify deviating from the presumptively reasonable lodestar calculation.

### d. Percentage Cross-Check

This case does not easily lend itself to consideration of a percentage cross-check. There was no true common fund created, the attorneys' fees and costs are not sought from the relief obtained for the class on an equitable basis, and the class is not actually entitled to any monetary relief. Due to the uncertain value of the benefit obtained, calculating an accurate constructive common fund upon which to apply the percentage cross-check is not possible, but the exercise is nevertheless helpful. The calculation confirms that by any reasonable measure Class Counsel seeks a disproportionate fee as compared to the results obtained for the class and further demonstrates that the full fee request is unreasonable.

Plaintiff values the benefit obtained at $8,694,000—the full retail value of digital copies of the two omitted films and 100% class participation. Value of the films aside, precedent within the Ninth Circuit does indicate that the benefit should be valued as the total fund made available to the class. *See Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997). But the Court doesn't believe that *Williams* is controlling or instructive here as there is not a true common fund and Defendants have not agreed to any particular valuation of the settlement.[11]

---

[11] *Williams* was a true common fund case with class counsel seeking fees of $1.5 million based on a cash settlement of up to $4.5 million. *Id.* at 1027. When only $10,000 was claimed, an argument was made that non-claiming class members never had any property interest in the unclaimed funds and that awarding a portion of those funds would be akin to statutory fee

The Court therefore must calculate a constructive common fund by assigning a monetary value to the relief obtained for the class and the amount disgorged from Defendants (the value of the attorneys' fees, costs, and plaintiff award).[12] *See In re Bluetooth*, 654 F.3d at 945 (expressing concern "that the amount awarded was 83.2% of the total amount defendants were willing to spend to settle the case").

Plaintiff's valuation of the benefit to the class is unreasonable. First, 100% class participation in a claims-made consumer class action is entirely unrealistic. *See supra*, p.8 (noting that class participation of 10% or less is common, often as low as 3%). In fact, only 0.21% of the class participated in this settlement.[13] On top of that, Class Counsel agreed to a more burdensome claims process that required a receipt for a DVD boxset bought as long ago as September 2012 in order to submit a valid claim. Of the 643 claims that were honored in this case, 43.23% of those claims were submitted without adequate proof of purchase,[14] meaning that only 0.12% of the class submitted claims that were valid under the settlement. As was ultimately the case, the parties could reasonably expect that the class participation would be drastically lower than 100%.

---

shifting. *Id.* But the court rejected the argument because the defendants had agreed to pay fees based upon the full settlement value. *Id.* In this case, there is no common fund, the class is not entitled to monetary relief, and the fees and costs are unrelated to the class's recovery. Most importantly, Defendants agreed not to challenge a fee application up to $350,000, but did not agree to any valuation of the settlement upon which the amount should be based.

[12] The cost of settlement administration is often included in the calculation as well. *Staton v. Boeing*, 327 F.3d 938, 974–75 (9th Cir. 2003). But Plaintiff has provided no indication as to the Defendants' settlement administration costs.

[13] 643 claims out of 300,000 potential class members. Dkts. #52 at ¶ 18 and #57 at ¶ 6.

[14] 278 of the 643 claims were not submitted with proper proof of purchase. Dkt. #52 at ¶ 18.

ORDER – 22

Second, valuing digital copies of the omitted films at their full retail value was unreasonable. *In re Mex. Money Transfer Litig.*, 267 F.3d 743, 748 (7th Cir. 2001) ("compensation in kind is worth less than cash of the same nominal value"). Here, the class members initially bought box sets, not individual films, and the average price for a movie in the box was $4.62. *Supra*, n.9. But this is based on the retail price and Defendants' costs were likely much less. Further, the class did not receive physical copies—as they originally purchased—and Defendants' cost of delivering the digital copies is undoubtedly still less than physical copies. Lastly, and as noted above, the omitted films were hardly the most popular of the Bond franchise.

For these reasons, the Court feels that 10% class participation (30,000 claims) and $4.62 for both omitted films is a more reasonable, yet still highly generous, estimate. This results in a total class benefit of $138,600.

Plaintiff argues that the value of the injunctive relief obtained pushes the value of the settlement higher. *In re Bluetooth*, 654 F.3d at 944 (noting that the district court did not discuss "the value of the injunctive relief or whether it in fact was 'socially beneficial'" and focusing on the benefit of such relief to the class). But "only in the unusual instance where the value to individual class members of benefits deriving from injunctive relief can be accurately ascertained may courts include such relief as part of the value of a common fund for purposes of applying the percentage method of determining fees." *Stanton*, 327 F.3d at 974. Here, the injunctive relief may benefit the public, but it does not benefit the class. *See In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009) ("the standard is not how much money a company spends on purported benefits, but the value of those benefits to the class"). Class members who were misled by Defendants' packaging when buying the James Bond DVD boxsets are unlikely

to purchase another James Bond DVD boxset since they already own the movies. Even if they buy another set, class members are unlikely to once again fall for the same deceptive packaging. They already experienced that boxsets containing "all" or "every" James Bond movie may not contain the omitted movies. Even with regard to the public benefit, the injunctive relief appears to be largely illusory. Defendants—having been sued for deceptive packaging and incurring substantial costs—were already unlikely to use the same packaging. Most importantly, Plaintiff has not provided any methodology to value the injunctive relief. As a result, the value of the injunctive relief is entirely speculative and properly excluded from consideration for the percentage cross-check. *See also Stanton*, 327 F.3d at 946 (when utilizing percentage method, injunctive relief is relevant to determining any deviation from the 25% benchmark, not in valuing the settlement).

Using these more reasonable valuations of the class benefits, an award of $50,753.12 for attorneys' fees would make that award 25% of the amount disgorged from Defendants[15]—the Ninth Circuit's benchmark. At the same time, an award of the lodestar amount of $184,665— much less $350,000—would eclipse the class's recovery and would constitute 54.81% of the amount disgorged from Defendants.

There are certainly difficulties in applying the percentage-of-recovery method in a settlement that does not create a true common fund. But here, the exercise demonstrates that even using exceedingly generous estimates, Class Counsel's fee award will eclipse the amount of relief obtained for the class. While Class Counsel should perhaps be insulated from the risk of limited recovery—by being awarded a fee award on the basis of the lodestar method—, the percentage-of-recovery method plays an important role in aligning the interests of the class and

---

[15] This is based upon a cost award of $12,159.37 and a Plaintiff award of $1,500. *See infra*, Sections III.4 and III.5.

class counsel. In such situations, class counsel is motivated to obtain the largest tangible benefit possible, to provide for the best possible notice to the class, and to assure that the claims process is not overly burdensome. 5 Newberg on Class Actions § 15:65 (5th ed.).

### e. Conclusion

This case demonstrates a common dissatisfaction with class actions: small relief for the class and big attorneys' fees for class counsel. The Court believes that basing Class Counsel's attorneys' fee award off of a portion of the amount actually claimed by the class would better align the interests of the class and Class Counsel. Here, the interests of the class and Class Counsel were simply not aligned. Class Counsel accepted compensation of an uncertain value and agreed to claim procedures that likely resulted in fewer claims. At the same time, Class Counsel removed any incentive they had to assure high class participation by insulating their fee from the benefit obtained for the class.

However, the recovery provided for in this case does not lend itself to a percentage-of-recovery calculation and the Court is left with the lodestar method to calculate attorneys' fees. While reductions appropriately decreased the lodestar amount to $184,665, the award still seems unreasonably large relative to the relief obtained for the class. But this case does not warrant continued action and the Court takes solace in the hope that "[a]ll things being equal, it seems more defensible that class attorneys, rather than defendants, receive the excess, as they will likely reinvest it in future class action cases." 5 Newberg on Class Actions § 15:70 (5th ed.).

### 4. Costs

Class Counsel are permitted to recover reasonable expenses that "would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citations omitted). These often include "filing fees, expert fees, telephone, messenger services, fax and

copying charges, electronic research, travel, lodging and meal expenses, costs of mediation and postage." 2 MCLAUGHLIN ON CLASS ACTIONS § 6.24 (14th ed.). Courts exercise discretion in awarding expenses and should be mindful that attorneys "are expected to absorb some of the cost of doing business as an attorney." *In re Media Vision Technology Securities Litigation*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).

Here, Class Counsel are seeking "(1) filing fees; (2) fees for copying, mailing, faxing, and serving documents; (3) costs incurred in conducting computer research; (4) *pro hac vice* application fees; and (4) [sic] mediation expenses." Dkt. #51 at 14. In total, Class Counsel are seeking $15,309.44 in expenses.

The Court finds the expenses associated with the filing fees, fees for copying, mailing, faxing, and serving documents, and *pro hac vice* applications to be reasonable and appropriate and will award those amounts. The costs associated with the mediation total $10,222.43 and include both payments to the mediator and travel costs for two attorneys to attend the mediation. The travel costs alone are $2,724.25.[16] The Court finds these expenses to be excessive as they appear to include first class airfare and stand in stark contrast to the $18,634.14 of value ultimately obtained for the class. Finding that a reasonable client is unlikely to bear the full brunt of these expenses, the Court reduces the award in this regard by $500.

Lastly, the Court will not award the expenses associated with computerized legal research. Reasonable charges for computerized research may be recovered "if separate billing for such expenses is the prevailing practice in the local community." *Trs. of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1259 (9th Cir. 2006). Plaintiff has not presented any evidence that this is the prevailing practice in the local community

---

[16] Mr. Statman traveled from Cincinnati to Los Angeles for the one day mediation at a cost of $1,968.00. Mr. Kleinberg traveled from Tacoma to Los Angeles at a cost of $756.25.

and in fact local counsel did not request any award for the costs of computerized research. The Court therefore does not award the $2,650.07 requested.

Making these adjustments to the amount requested by Plaintiff, the Court awards total costs of $12,159.37.

**5.  Lead Plaintiff Award**

Named plaintiffs may receive a reasonable incentive payment. *Staton*, 327 F.3d at 977. Whether to grant an incentive payment is discretionary and is "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Plaintiff seeks a $5,000 incentive award for herself. Plaintiff indicates that she was involved in reviewing the complaints and kept updated on the settlement discussions. Dkt. #56 at ¶ 3. Plaintiff also indicates that she suffered some negative press related to the lawsuit. Dkt. #56 at ¶ 4. But the billing records submitted by Class Counsel do not reveal coordination with Plaintiff and Plaintiff has not submitted any of the negative press, though she does swear to it. A $5,000 incentive award appears excessive. None of the class members obtained any cash settlement in this action and a $5,000 award would be more than 170 times the value of the omitted films—the recovery of the other class members. However, finding that some award is appropriate on account of Plaintiff's involvement with this action, the Court accordingly awards Plaintiff an incentive payment of $1,500.

**IV.    CONCLUSION**

Having reviewed Plaintiff's Motion for Final Approval and Plaintiff's Motion for Fees, along with the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff's Unopposed Motion for Final Approval of Stipulation and Agreement of Settlement and Final Certification of the Settlement Class (Dkt. #50) is GRANTED.

   a. The Stipulation and Agreement of Settlement is approved.

   b. The Court certifies, consistent with the Stipulation and Agreement of Settlement, the following settlement class:

   > All persons and entities (and their successors-in-interest, assigns, and heirs) in the United States that purchased one or more of the James Bond Sets prior to January 31, 2018. Excluded from the Settlement Class are: MGM and Fox and any person, trust, firm, corporation or other entity Affiliated with or related to MGM and Fox; and Any persons or entities who exclude themselves by submitting a timely Request for Exclusion in accordance with the requirements set forth by the Court.

2. Plaintiff's Unopposed Motion for Attorneys' Fees and Expenses and Named Plaintiff Enhancement Award (Dkt. #51) is GRANTED IN PART.

   a. The Court awards attorneys' fees in the amount of: $184,665.

   b. The Court awards costs in the amount of $12,159.37.

   c. The Court approves an award to named plaintiff of $1,500.

3. This matter is now CLOSED.

Dated this 16 day of October, 2018.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE